FRANCIS B. LYNCH, petitioner.

Norfolk.   November 8, 1979. — February 6, 1980.

Present: HENNESSEY, C.J., QUIRICO, WILKINS, LIACOS, & ABRAMS, JJ.

*Imprisonment,* Good conduct deductions, Escape, Parole.

Where a prisoner was ordered discharged on parole from an eighteen-to-twenty year sentence because his parole from that sentence had been unconstitutionally revoked, he was entitled to have good conduct credits deducted from that sentence for the entire period of the illegal incarceration, including a two-year period he concurrently served an unrelated sentence. [758-759]

Although a prisoner who escaped while serving a sentence subsequently determined to be invalid would ordinarily forfeit any accumulated good conduct credits pursuant to G. L. c. 127, § 83B, where the prisoner had been held for approximately thirteen months in violation of his constitutional rights, considerations of fairness dictated that his good conduct credits should not be forfeited. [759]

PETITION for writ of habeas corpus filed in the Superior Court Department on January 26, 1979.

The case was heard by *Donahue,* J.

After review by the Appeals Court the Supreme Judicial Court granted leave to obtain further appellate review.

*Kevin J. Sullivan,* Assistant Attorney General, for the respondents.

*Jonathan Shapiro* for the petitioner.

WILKINS, J.   We granted the Commonwealth's application for further appellate review to consider the question of the petitioner's right to statutory good time credits (see G. L. c. 127, § 129) against certain sentences.   The facts in this case are set out in the opinion of the Appeals Court, *Lynch, petitioner,* 7 Mass. App. Ct. 529, 530-531 (1979).   We must consider two questions:   (1) whether the petitioner must forgo any statutory good conduct deductions which might have been earned against his eighteen-to-twenty-year

sentences during the approximately two years he concurrently served an unrelated sentence, because during that time he should have been on parole from the eighteen-to-twenty-year sentences, and (2) whether the petitioner forfeited good time credits earned on the eighteen-to-twenty-year sentences because of his escape on November 19, 1974, while being held on all these sentences. We answer each question in the negative, and consequently agree with the determination of the Appeals Court that the petitioner should be released from any further service of the eighteen-to-twenty-year sentences. *Lynch, petitioner,* 7 Mass. App. Ct. at 537-538.

1. In an earlier habeas corpus proceeding, it was determined that the Parole Board had unconstitutionally revoked the petitioner's parole on the eighteen-to-twenty-year sentences, and that from the date of that revocation, May 25, 1974, until the petitioner was discharged to his prior parole status on November 14, 1977, the petitioner should have been on parole with respect to those sentences. The Department of Correction (department) concedes that the petitioner should receive good time credits for the period during which he was thus improperly confined on the eighteen-to-twenty-year sentences, except for the period of approximately two years beginning on May 25, 1974, during which he concurrently served his sentence for assault and battery by means of a dangerous weapon.

We agree with the Appeals Court's conclusion that principles of fairness require extending good time credits for the entire period of the petitioner's improper confinement. As the Appeals Court pointed out, the department cannot fairly rely on the fiction that the petitioner was out on parole because he should have been, and thus as a parolee was entitled to no good time deductions during the disputed period (see *Pina* v. *Superintendent, Mass. Correctional Inst., Walpole,* 376 Mass. 659, 667-678 [1978]). The department would have us treat the petitioner as if he were not serving the eighteen-to-twenty-year sentences for the purpose of earning good time credits while he was properly confined on his concurrent assault and battery sentence. To say that the

petitioner was not serving his eighteen-to-twenty-year sentences flies in the face of reality and would be manifestly unfair. The petitioner should not be penalized by denial of credits because he prevailed in his first habeas corpus proceeding. *Manning* v. *Superintendent, Mass. Correctional Inst., Norfolk,* 372 Mass. 387, 394, 396 (1977). *Lewis* v. *Commonwealth,* 329 Mass. 445, 447-449 (1952).

The department argues that, during service of his concurrent assault and battery sentence, the petitioner did not serve any time analogous to "dead time" during which he could accumulate no good conduct credits.[1] This does not ameliorate the unfairness of denying good time credits for a period of improper confinement on the eighteen-to-twenty-year sentences when such credits would have been extended as of right if the petitioner had been held lawfully on these sentences.

2. On November 19, 1974, while he was confined improperly on the eighteen-to-twenty-year sentences but properly on his sentence for assault and battery, the petitioner escaped from the prison camp where he was being held. Under G. L. c. 127, § 83B, a prisoner who escapes from a prison camp forfeits all deductions from any sentence he is then serving. The Appeals Court concluded, however, that the forfeiture provisions of G. L. c. 127, § 83B, did not apply to the petitioner. *Lynch, petitioner, supra* at 537-538. The court expressed grave doubt whether a person who had been paroled from a place of confinement could legally be considered to have escaped therefrom within the contem-

---

[1] This court has used the term "dead time" to refer to time spent in confinement under an invalid sentence for which no day-to-day credit is given against any sentence. *Manning* v. *Superintendent, Mass. Correctional Inst., Norfolk,* 372 Mass. 387, 390 (1977). The department, notwithstanding its insistence that the petitioner is not entitled to good conduct credits for time served on his eighteen-to-twenty-year sentences when he was constructively "on parole," viewed itself as bound by our decisions in the *Manning* case, *supra;* in *Brown* v. *Commissioner of Correction,* 336 Mass. 718 (1958); and in *Lewis* v. *Commonwealth,* 329 Mass. 445, 447-449 (1952), to offer good conduct credits for the period of improper incarceration prior to imposition of the assault and battery sentence.

plation of § 83B, and in keeping with the rules of construction applicable to such a penal statute (*Wood* v. *Commissioner of Correction,* 363 Mass. 79, 81 [1973]) resolved the ambiguity in favor of the petitioner.

This reasoning, however, employs the same fiction we have just rejected, that is, treating the petitioner as if he actually were out on parole because he ought to have been. In fact, however, at the time of his escape the petitioner was in a prison camp, confined on his eighteen-to-twenty-year sentences pursuant to legal process issued under the laws of the Commonwealth. If, as ultimately was shown, his commitment on these sentences at that time was erroneous, it was voidable for error and not void, and, therefore, was valid until reversed through the legal process. See *Lewis* v. *Commonwealth,* 329 Mass. 445, 448 (1952). The petitioner's right in these circumstances was to test the validity of his confinement through normal legal channels, not by escape. See *Commonwealth* v. *Morihan,* 4 Allen 585, 587 (1862). Any implication that a prisoner who ought to be paroled, but is not, may depart without authority from his place of confinement and subsequently may assert the invalidity of his confinement as a defense to the crime of escape (see G. L. c. 268, § 16) must be rejected.[2] Such a prisoner may

---

[2] The rule that where, as here, imprisonment is under color of law, the prisoner is not entitled to resort to self-help, but must apply for his release through regular legal channels, is supported by the weight of authority in other jurisdictions. See, e.g., *United States* v. *Cluck,* 542 F.2d 728, 732 (8th Cir.), cert. denied, 429 U.S. 986 (1976); *United States* v. *Smith,* 534 F.2d 74, 75 (5th Cir. 1976), cert. denied, 429 U.S. 1100 (1977); *United States* v. *Allen,* 432 F.2d 939, 940 (10th Cir. 1970); *United States* v. *Haley,* 417 F.2d 625, 626 (4th Cir. 1969); *Lucas* v. *United States,* 325 F.2d 867, 867-868 n.2 (9th Cir. 1963); *Aderhold* v. *Soileau,* 67 F.2d 259, 260 (5th Cir. 1933); *In re Estrada,* 63 Cal. 2d 740, 748-749 (1965); *State* v. *Handran,* 92 Idaho 579, 580-581 (1968); *Henderson* v. *State,* 198 Kan. 655, 656-657 (1967); *State* v. *Perry,* 364 So. 2d 900, 901 (La. 1978); *State* v. *Hannon,* 395 A.2d 118, 121 (Me. 1978); *Vucci* v. *State,* 18 Md. App. 157, 159 (1973). See generally Annot., 70 A.L.R.2d 1430, § 4, at 1437 (1960). But see Note, Escape from Cruel and Unusual Punishment: A Theory of Constitutional Necessity, 59 B.U.L. Rev. 334 (1979).

lawfully be convicted of the crime of escape,[3] and ordinarily such a prisoner forfeits any accumulated good conduct credits, pursuant to G. L. c. 127, § 83B. *Wood* v. *Commissioner of Correction*, 363 Mass. 79, 84 (1973).

Nevertheless, in the special circumstances of this case, we conclude that considerations of fairness dictate that good time credits should not be forfeited. The forfeiture statute could not have been intended to deal with this situation. Where the petitioner was held for approximately thirteen months in violation of his constitutional rights while he was serving no other sentence (see *Lynch, petitioner, supra* at 535-536), a somewhat greater measure of fairness should be extended. "Liberty is of immeasurable value; it will not do to read statutes and opinions blind to the possible injustice of denying credit." *Manning* v. *Superintendent, Mass. Correctional Inst., Norfolk*, 372 Mass. 387, 394 (1977).[4]

The judgment of the Superior Court dismissing the petition is reversed, and a new judgment is to be entered ordering the discharge of the petitioner from any further service of his eighteen-to-twenty-year sentences.

*So ordered.*

---

[3] The petitioner was convicted of the crime of escape and served a sentence of six months on that conviction.

[4] The department was aware of the injustice of denying credit in this case. By the fiction of deeming the petitioner not to be serving his eighteen-to-twenty-year sentences while he was improperly confined due to the unconstitutional revocation of his parole, the department sought to avoid the literal application of G. L. c. 127, § 83B, which would ordinarily have required the forfeiture of all good time credits earned by the petitioner from 1966, when the sentences were imposed, until the time of his escape. The department was willing to give good time credits during the period when the petitioner was serving only his eighteen-to-twenty-year sentences but should not have been. However, if the fiction is to be maintained consistently, the petitioner was not at that time "serving" that sentence because he was not properly being held, and good time credits ought not to be given during that period either. We take a more straightforward approach to reaching a just result in this case, eschewing legal fictions and frankly recognizing that in the peculiar circumstances of this case, considerations of fairness forbid a forfeiture of good time credits.