[No. 15495-8-I.   Division One.   August 6, 1986.]

THE STATE OF WASHINGTON, *Respondent*, v. DARROLD
DEVUAN CHRISTIAN, *Appellant*.

*Neil Fox* of *Washington Appellate Defender Association*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Monica Benton, Deputy*, for respondent.

PEKELIS, J.—Darrold Devuan Christian appeals his conviction for first degree escape. He alleges that the trial court erred in allowing a witness to testify in violation of the best evidence rule, in denying his motion to dismiss for failure to charge him with the willful failure to return to a work release facility instead of with first degree escape, and in convicting him of first degree escape because there was insufficient proof thereof. We disagree and affirm the trial court.

On March 1, 1984, Christian was charged by information with first degree escape in violation of RCW 9A.76.110. The bench trial was held on September 13, 1984, and the only witness was John A. LaPlante, a probation and parole officer at Bishop Lewis House, a state work release facility.

LaPlante testified that while Christian was on work release he was Christian's parole officer. On December 16, 1983, LaPlante believed Christian was going on a work search. If that were the case, he would have been required to notify a staff member at the beginning of the day and to properly fill out the sign–out sheet, initial it, and have the supervising staff member initial it. At approximately 8:45 a.m., LaPlante's supervisor ordered him and another staff member to search for Christian because there was some indication that he left without permission. They looked at the sign–out book, and there was no notation that Christian had signed out or that a staff member had had any contact with Christian regarding his leaving the facility.

They then went to Christian's room. Not finding him there, the staff searched the entire facility as well as the surrounding area. As is routine, LaPlante called local law enforcement agencies and local hospitals before beginning formal departmental escape procedures. LaPlante testified that between December 16, 1983, and February 1984, the date that he ended his employment at Bishop Lewis House, Christian had not returned. On October 10, 1984, the court

entered findings of fact and conclusions of law, determining that Christian was guilty of first degree escape.

■ Christian first contends that the trial court violated ER 1002, the best evidence rule, in allowing LaPlante to testify regarding the notations on the sign–out sheet when the sheet itself was not admitted into evidence. At trial, Christian's attorney objected twice to this testimony. Although she did not offer any basis for her first objection, the court sustained it as to the form of the question. The prosecutor rephrased the question and defense counsel again objected, claiming lack of foundation. The court overruled the objection on this basis. Christian's attorney did not raise ER 1002 as a further basis for exclusion. It is well established that

> [i]f a specific objection is overruled and the evidence in question is admitted, the appellate court will not reverse on the basis that the evidence should have been excluded under a different rule which could have been, but was not, argued at trial.

*State v. Ferguson*, 100 Wn.2d 131, 138, 667 P.2d 68 (1983) (quoting 5 K. Tegland, Wash. Prac., *Evidence* § 10, at 25 (2d ed. 1982)). Thus, we decline to consider this assignment of error.

Christian next contends that the trial court erred in denying his motion to dismiss for the failure to charge him under RCW 72.65.070 for the willful failure to return to a work release facility rather than under RCW 9A.76.110 for first degree escape. The language of the two statutes does not support this contention.[1] RCW 72.65.070 punishes

---

[1]RCW 72.65.070 provides:

"Any prisoner approved for placement under a work release plan who wilfully fails to return to the designated place of confinement at the time specified shall be deemed an escapee and fugitive from justice, and upon conviction shall be guilty of a felony and sentenced in accordance with the terms of *chapter 9.31 RCW. The provisions of this section shall be incorporated in every work release plan adopted by the department.

"*Reviser's note: 'Chapter 9.31 RCW' was repealed by 1975 1st ex.s. c. 260 § 9A.92.010. For later enactment see chapter 9A.76 RCW."

RCW 9A.76.110 provides:

inmates who willfully fail to return to confinement while RCW 9A.76.110 punishes inmates who escape from custody, *i.e.,* leave without permission.

Nevertheless, Christian asserts that *State v. Danforth,* 97 Wn.2d 255, 643 P.2d 882 (1982) supports his argument that he should have been charged under RCW 72.65.070. In *Danforth,* the defendants left their work release facility to look for employment and failed to return. It appears from the opinion that they had permission to leave the facility. Although the court broadly held "that work release inmates may not be prosecuted under the general escape statute, RCW 9A.76.110", the court went on to state that "RCW 72.65.070, as the more specific statute, . . . preempts prosecutions under RCW 9A.76.110 of those defendants whose crime is *failure to return* to a work release facility." (Italics ours.) *Danforth,* at 257, 258. The court did not have before it and did not address the case of an inmate whose crime is leaving without permission.

Subsequent case law does not support Christian's contention that he was charged under the wrong statute. In *State v. Thompson,* 35 Wn. App. 766, 669 P.2d 1270 (1983), the defendant was charged with first degree escape under RCW 9A.76.110 after leaving a work release facility without permission. The court rejected Thompson's argument that he could only be charged under RCW 72.65.070. The court found *Danforth* inapplicable because:

> Thompson did not "[fail] to return to the designated place of confinement at the time specified"; he returned to his work release facility at the proper time, but then left again without permission. The facts of his offense thus do not fall under RCW 72.65.070. Thompson was properly charged with escape under RCW 9A.76.

*Thompson,* at 769. *Thompson* was not appealed to the Supreme Court.

---

"(1) A person is guilty of escape in the first degree if, being detained pursuant to a conviction of a felony or an equivalent juvenile offense, he escapes from custody or a detention facility.

"(2) Escape in the first degree is a class B felony."

In *State v. Gonzales,* 37 Wn. App. 251, 680 P.2d 63 (1984), the defendant was charged with first degree escape under RCW 9A.76.110. After returning to his work release facility late, he was told that his work release status was suspended. He then ran from the facility. Again, the court rejected the defendant's contention that he should have been charged with the willful failure to return to the facility under RCW 72.65.070. "Defendant did return; his running from the facility without permission gives rise to the escape charge." *Gonzales,* at 253.[2] The Supreme Court affirmed the decision, *State v. Gonzales,* 103 Wn.2d 564, 693 P.2d 119 (1985), although it did not discuss this issue.

Christian asks this court to overrule *State v. Thompson, supra,* arguing that it conflicts with *Danforth* where he claims the court held without limitation that work release inmates may not be prosecuted under RCW 9A.76.110. However, reading *Danforth* carefully, the two cases do not conflict. *Danforth* "preempts prosecutions under RCW 9A.76.110 of those defendants whose crime is failure to return to a work release facility", *Danforth,* at 258, while Thompson's crime, like Christian's, was leaving without permission.[3]

Christian is correct, however, in perceiving that *Danforth* recognizes that the "willfulness" element imposed by the Legislature in RCW 72.65.070 requires a greater quantum of proof for the State than the "knowledge" element in RCW 9A.76.110, which has been imposed by case law. *Danforth,* at 258–59; *State v. Descoteaux,* 94 Wn.2d 31, 35, 614 P.2d 179 (1980). *Danforth*'s exhortation to charge only under RCW 72.65.070 when prosecuting work release

---

[2]Compare *State v. Newman,* 40 Wn. App. 353, 357–58, 707 P.2d 1356 (1985), where the court found it error to charge the defendant under RCW 9A.76.110 when he left with permission, but failed to return by the deadline.

[3]In addition, it is unlikely that *Danforth* intended such a sweeping proposition since it would result in the inability to charge nonstate work release inmates with any crime for their unauthorized absence from custody. *See* RCW 72.65-.010(4) and *State v. Hall,* 104 Wn.2d 486, 706 P.2d 1074 (1985), discussed *infra.*

inmates who fail to return to confinement is in recognition of this distinction. *Danforth,* at 258–59.

In the recent case of *State v. Hall,* 104 Wn.2d 486, 706 P.2d 1074 (1985), the Supreme Court again addressed the distinction between the culpability elements of the two statutes. There the defendant was convicted of first degree escape under RCW 9A.76.110 after failing to return to a work release program administered from the Vancouver City Jail. When read together with RCW 72.65.010(4) which defines "prisoner" as one convicted of a felony and sentenced to confinement in a state facility, RCW 72.65.070 applies only to state prisoners. *Hall,* at 492. Since the defendant was not a state inmate, he could only be charged with escape. The court held that his right to equal protection was violated because RCW 9A.76.110, applicable to all prisoners, has a lower culpability element than RCW 72.65-.070, applicable only to "state prisoners who escape from work release". *Hall,* at 492–93. However, the court resolved the equal protection problem by holding that any time a work release inmate is charged under the escape statute, the State is required to prove that the defendant

> willfully failed to return to be convicted of first degree escape. By applying this culpability requirement, RCW 9A.76.110 and RCW 72.65.070 will be reconciled and a work release prisoner's right to equal protection of the laws will be safeguarded.

*Hall,* at 493–94.

The court in *Hall* focused on the inequality created between state and nonstate work release inmates due to the different culpability levels in the two statutes. In discussing the two statutes, however, the court did not distinguish between those defendants whose crime is leaving a work release facility without permission, *i.e.,* those who escape, and those whose crime is failing to return. While the culpability elements of the statutes differ, so do the crimes. This distinction is blurred by the court's use of the term "escape" when it is actually referring to the willful failure to return to confinement. *E.g., Hall,* at 492, 493.

Nevertheless, to the extent *Hall* is applicable to this case,[4] the trial court applied a standard consistent with *Hall*'s holding. In order to avoid a possible problem under *Danforth,* the State voluntarily assumed the burden of proving that Christian willfully escaped from custody. The State thus avoided the problem addressed in *Hall.*

In summary, we believe that a close reading of the principles enunciated in *Danforth* and *Hall* supports the conclusion that a distinction exists between inmates who leave without permission and those who fail to return. Thus, we decline Christian's invitation to overrule *State v. Thompson, supra,* and we hold that it is not proper to charge an inmate who leaves without permission with the crime of failure to return. Irrespective of this determination, since the higher culpability standard was actually applied in Christian's case, we hold that there is no conflict with *Danforth* or *Hall* and no error in charging him under RCW 9A.76.110.

Finally, Christian contends that there was insufficient evidence to prove that he knew his departure from the work release facility was unauthorized and that he willfully escaped. In reviewing the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Smith,* 104 Wn.2d 497, 507, 707 P.2d 1306 (1985); *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980). In determining the sufficiency of the evidence, circumstantial evidence is not to be considered any less reliable than direct evidence. Further, specific criminal intent may be inferred from conduct where it is plainly indicated as a matter of logical probability. *State v. Delmarter,* 94 Wn.2d 634, 638, 618 P.2d 99 (1980); *State v. Lozier,* 32 Wn. App. 376, 378, 647 P.2d 535 (1982).

---

[4]Christian was tried before *Hall* was decided, and we do not determine whether *Hall* is to be applied retroactively.

■ In order to convict a defendant of first degree escape under RCW 9A.76.110, the State must demonstrate that the defendant knew his or her actions would result in leaving confinement without permission. *State v. Danforth,* 97 Wn.2d 255, 258–59, 643 P.2d 882 (1982); *Descoteaux,* at 35. As we have discussed, the State also elected to add the element of willfulness to its burden of proof. At trial, LaPlante testified:

Q. On December 16, 1983, was Mr. Christian required to report in any way before leaving?
A. Mr. Christian would be required to sign out at the desk area at the facility as to where he was going, which I believe he was supposed to be going on work search at the time.
Q. Was that done?
A. Not to my knowledge, no.

. . .

Q. . . . Was there any indication that Mr. Christian had signed out on that day?
A. No.
Q. Was there any indication of a desk staff person having any contact with Mr. Christian as noted in the book?

. . .

A. To my knowledge, no.

On appeal, Christian concedes that he was required to comply with the facility rules. The evidence was uncontroverted that he did not sign out and that he was gone for 2 months. Taking the evidence in the light most favorable to the prosecution, one may infer as a matter of logical probability that Christian knew his actions would result in leaving the facility without permission and that he willfully left. There was substantial evidence to support the conclusion of the trial court that Christian willfully escaped from Bishop Lewis House, a detention facility.

We affirm.

SCHOLFIELD, C.J., and WEBSTER, J., concur.