[No. 20866.   Department Two.   March 20, 1928.]

## J. F. CAMPBELL, *Respondent*, v. HAUSER LUMBER COMPANY, *Appellant*.[1]

[1] LOGS AND LOGGING (3)—CONTRACTS (181)—CUTTING LOGS—BREACH OF CONTRACT—QUESTION FOR JURY.   In an action for breach of a logging contract by reason of a lumber company's refusal to permit cutting upon one of the sections covered by the contract, on the ground that the quantity thereon was inconsequential, a question for the jury is presented, where the evidence is conflicting as to the quantity of merchantable timber.

[2] CONTRACTS (160)—LOGS AND LOGGING (3)—BREACH OF CONTRACT—RIGHTS AND LIABILITIES OF PARTIES.   A breach of a substantial part of a logging contract justifies an abandonment of the whole contract, even though performance of the remainder of the contract is not rendered impossible or impractical.

[3] CONTRACTS (151)—BREACH—WAIVER.   A delay of fifteen days in declaring a forfeiture for breach of a contract does not constitute a waiver of the right to avoid the contract, where the adverse party is not put in a worse position, either by the delay or by expenses incurred.

[4] CONTRACTS (181-1)—LOGS AND LOGGING (3)—ACTION FOR BREACH OF CONTRACT—INSTRUCTIONS.   In an action for breach of a logging contract through the withdrawal of a quarter section of timber land covered by the contract, an instruction that, if plaintiff would have been less willing to enter into the contract if that part were not included, because his profits to be derived from the performance of the contract as a whole would be substantially less, is not objectionable as being misleading.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered March 18, 1927, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract.   Affirmed.

*C. H. Potts* and *Hamblen & Gilbert,* for appellant.

*Graves, Kizer & Graves,* for respondent.

FULLERTON, J.—This controversy arises out of a logging contract.   On September 20, 1926, the respond-

[1]Reported in 265 Pac. 468.

ent, Campbell, and the appellant, Hauser Lumber Company, entered into a written contract whereby the respondent agreed to cut into saw-logs and deliver at the appellant's sawmill, all the merchantable timber then being on certain described lands, which it was feasible and practicable to deliver at such mill. The appellant, on its part, agreed to pay for the services fixed prices per thousand feet, log scale, the prices varying with the distance the timber was from the mill. The lands described were in part in section 35, in part in section 26, and in part in section 23, all in township 27 north, range 45 east of the Willamette meridian. The preparatory work necessary to entering upon the performance of the contract required a considerable expenditure. It was necessary to repair the existing roads leading from the mill to the timber, construct new ones, construct skidways and decking places for logs alongside the roads, construct buildings for housing the men employed on the work, barns for teams necessary to be used thereon and structures for storing supplies for the men and feed for the teams.

The respondent entered upon the performance of the work immediately after its terms had been agreed upon, some days before the actual execution of the written contract. He seems to have carried on the work with diligence. He early performed the preparatory work, and by November 7, 1926, had practically cut all of the timber on sections 35 and 26, and had a large part of the logs decked alongside the roads ready for hauling to the mill, and he had delivered a considerable quantity to the mill. The work up to that time had been performed under the direct supervision of the respondent. He was then injured, necessitating his confinement to a hospital. He turned the supervision of the work over to a foreman. The foreman, a few days later, started men to cutting the timber on

section 23, when the appellant immediately ordered it stopped. There seems to be some controversy in the evidence as to the reason for the order, but, whichever version is accepted as the true one, it was not because of any dereliction on the part of the respondent. Notice of the order was brought to the attention of the respondent within a few days after it was given, and he later on elected to treat it as a breach of the contract. He notified the appellant to that effect on November 27, 1926, and thereupon withdrew his employees from the work. Between the time he had notice of his exclusion from section 23 and the time he gave notice of his election to treat the contract as breached, further work in the prosecution of the contract was performed by his employees.

The appellant, conceiving that the refusal of the respondent to continue in the performance of the work was without justification and was a breach of the contract on the respondent's part, gave notice that it elected to treat his action as a breach of the contract and notice that it would itself complete the work and charge any excess cost over the contract price expended in its performance to the respondent. It thereupon completed the work, expending in its performance the sum of $1,652.22, over and above the sum it would have been compelled to pay had the respondent performed the contract.

The respondent instituted the present action to recover as for a breach of the contract on the part of the appellant. He laid his damages in the sum of $2,800. The appellant, in its answer to the complaint, denied any breach of the contract upon its part, and affirmatively alleged a breach on the part of the respondent, averring that it had suffered a loss because thereof in the sum expended in the completion of the contract, and sought judgment for such sum. The

cause was tried by the court sitting with a jury, and resulted in a verdict and judgment in favor of the respondent for the sum of $1,000.

[1] The first of the appellant's assignments of error questions the sufficiency of the evidence to sustain the judgment entered. The appellant does not contend that the evidence was not sufficient to sustain a finding that it actually stopped the work of logging section 23, but contends that this was such a minor and inconsequential part of the entire contract that its breach in that respect did not justify the respondent in his refusal to perform the remainder of the work, and that, in consequence, the breach of the contract was on his part.

It is the rule, no doubt, that in contracts of this character an inconsequential or trivial breach of it on the part of one of the parties thereto will not justify the other in declaring the contract at an end, even though the contract be an entirety, as distinguished from one that is severable. The law looks to the substance of things rather than to its inconsequentials, and it is only breaches of a contract which go to its substance that will justify the other party in refusing to further perform. But while the rule itself is well established, it is not always easy of application. The instances are not many where the court may declare as matter of law that the breach is not of the substance of the contract. Usually, the question is of mixed law and fact, and one for the determination of the trier of the fact under instructions as to the applicable principles of law. We think it was so in this instance.

There was a dispute in the evidence as to the amount of the timber on the section 23 that could be feasibly and practicably hauled to the appellant's mill. The appellant's evidence tended to show that the amount was only slightly in excess of 100,000 feet, and that

this was of such small importance, when compared with the whole and in such a difficult situation, as not to materially affect the value of the contract to the respondent. The evidence of the respondent, on the other hand, tended to show that the amount of timber that could be hauled was in excess of 250,000 feet, and that he had, at the time he was ordered to cease cutting thereon, performed and incurred the cost of performing the work necessary to make the timber available for hauling. His evidence, furthermore, tended to show that he had entered into certain sub-contracts for felling, cutting and hauling the timber, which would leave him a certain profit on the particular work, and, further, that the exigencies were such that to omit this part of the work made the performance of the remaining part more costly to him.

Whether, if it conclusively appeared that the quantity of timber was the amount for which the appellant contends, and that the respondent's sole loss was the profit he would make in cutting and delivering that quantity, we would say that it would justify us in declaring, as matter of law, that the breach was unsubstantial, we need not determine. We are clear that, if the amount of the timber was as the respondent contends, and that, in addition to his loss of profits on that part of the work, he would incur additional losses on the other parts of the work, we are not so justified. The trial court left it to the jury to say whether, under all the circumstances, the breach of the contract on the part of the appellant was substantial, and we cannot conclude that it erred in so doing.

[2] The appellant further contends that, if it be conceded that the breach committed by the appellant was of a substantial part of the contract, the breach did not justify an entire abandonment of the contract on the part of the respondent. The argument is that

the breach must be of a vital term of the contract, rendering the performance of the remainder impossible, or at least impractical, before the party against whom the breach is committed is justified in abandoning performance in its entirety. But we do not understand that the rule goes to this extent. The authorities generally hold, and it is the just rule, we think, that if the breach be of a substantial part of an entire contract, as distinguished from a part that is immaterial or inconsequential, though the breach may not render a performance of the remainder impossible or impractical, an abandonment of the whole is justified. Doubtless, in such a case the party against whom the breach is committed may perform that part of the contract he is permitted to perform, and resort to an action in damages for the breach. But he has a choice of remedies, and as the choice is with him, the other party may not lawfully complain of his choice. Where a different rule has been applied, it has generally been in instances where the contract consists of several and distinct covenants, so far separable and independent that interference with the performance of one will not materially affect the performance of the other. But this principle is without application in this instance. Here, the contract was an entirety. The timber was in one body; the notation of the land on which it was situated by governmental sections being only a convenient means of description. It could be logged as one body, and the cost of the preparatory work, and much of the cost sometimes denominated as overhead, was the same whether much or little of it was logged. The quantity was material to the respondent. It could mean the difference between a profit and a loss.

[3] A further contention is that the respondent by his conduct waived his right to declare a forfeiture

for the breach of the contract committed by the appellant. This contention has its foundation in the fact that the respondent was informed that the appellant had directed his employees to cease work on section 23, about the 12th day of the month of November, and did not notify the appellant that he would treat the direction as a breach of the contract until the 27th day of the same month, and in the meantime suffered his employees to continue the work on other parts of the contract. But conceding that a delay for the length of time here suffered to elapse between the breach and the election would warrant the court, if nothing else appeared, in declaring as matter of law that the right to complain was waived, we cannot conclude it sufficient under the circumstances here disclosed. The respondent was, at that time, confined in a hospital some distance from the place of the work. The order was not given directly to him by the appellant, but was given to his foreman, and was communicated to him by his foreman. He was entitled, under the most favorable circumstances, to a reasonable time in which to determine his subsequent conduct, and it would seem, from these facts alone, that he acted with reasonable promptness.

But waiver of a breach has in it some of the elements of an estoppel. Usually, the delay must have the effect of putting the other party in a worse position than he would be in had the election been declared promptly. Here, the evidence is, as we view it, that the delay had no such effect. The work consisted in felling a few scattered trees and bringing the logs cut therefrom to the decking places where they could be loaded for hauling to the mill. But this operated rather to the appellant's benefit than to its injury. If its stated cost for performing the work it performed after it took over the contract is correct, the cost to it was less than

it subsequently paid for like services. It is true, that orders for the work performed were drawn on the appellant and paid by it. But under its contract with the respondent it was obligated to pay the supply bills and labor costs as the work progressed, and it is not shown that it suffered a loss by these payments. In other words, the cost was no more than it would otherwise have been compelled to pay for the work. The trial court treated it as a circumstance to be considered by the jury, together with the other circumstances in the case, in determining whether the respondent had unreasonably delayed his election, and submitted the question to them under instructions to which the appellant makes no complaint. It is our conclusion that it did not err in so doing.

[4] The trial court gave to the jury, among others, the following instruction:

"You will see that the first question you will be called upon to answer is whether the defendant's direction to the plaintiff to do no work on the southeast quarter of section 23 justified plaintiff in his abandonment of the further performance of the contract. The burden is upon the plaintiff to show by the greater weight of the evidence in this case that he was so justified. Whether he would be justified or not depends upon the character of that part of the contract as related to the remainder of the contract. If that part of the contract which refers to the southeast quarter of section 23 was a substantial part of the contract; if plaintiff would have been less willing to enter into the contract if that part were not included; and if the profits which the plaintiff might otherwise have made from the full performance of the contract would have been substantially decreased and the performance of the contract rendered substantially less profitable by not being permitted to log that quarter; then he was justified in his refusal to do any further work thereunder. But on the other hand, if the greater weight of the evidence fails to show that the logging

of the southeast quarter of section 23 was regarded by the plaintiff as going to the substance of the whole contract, as I have just instructed you, then plaintiff was not justified in his refusal to proceed with the further performance of the contract.''

The appellant objects to that part of the instruction wherein the court undertakes to illustrate what would be a substantial breach of the contract warranting the respondent in refusing to continue in the further performance of it. It may be, that the court was not happy in its illustration, as manifestly the sole criterion for determining whether the omission of this part of the work from the contract was a substantial breach of it does not depend solely on the respondent's idea of its importance. Unquestionably, we think, whether the respondent would have been less willing to enter into the contract with the work to be performed on section 23 eliminated therefrom, and whether he regarded that part of the work as a substantial part of the contract, were circumstances which the jury were entitled to consider in determining whether there had been a substantial breach of the contract, and this being true, it was not, of course, error for the court to so state. The important question, therefore, is, were the jury misled because the court did not make a more complete statement? It is not our opinion that they were. An examination of the record discloses that the evidence was not directed to these considerations. The respondent's evidence tended to show that the logging of this particular section was a substantial part of the contract, and that its elimination therefrom materially lessened its value to him, while the evidence on the part of the appellant was to the contrary effect. To conclude that the jury were misled by the instruction is to conclude that they lost sight of the real issue, and decided the cause on

other considerations than what appeared to them to be the preponderance of the evidence on the principal fact involved. We do not feel warranted in so doing.

The other errors assigned, we think, are met by what we have said on the questions discussed, and require no special notice.

The judgment is affirmed.

MACKINTOSH, C. J., MAIN, ASKREN, and HOLCOMB, JJ., concur.